**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**TRAVIS R. NORWOOD,**

**Plaintiff,**

**v.** **Civil Action No. 5:19-CV-00604**

**TROOPER M. BYNUM,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is ***Defendant Bynum's Motion to Dismiss*** (ECF No. 15).[1] By Standing Order, this matter was referred to the undersigned for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 5) Having examined Plaintiff's Complaint and Amended Complaint (ECF Nos. 2, 10), the

[1] Also pending before the Court is ***Plaintiff's Motion for Appointment of Counsel*** (ECF No. 18). Appointment of counsel is authorized by 28 U.S.C. § 1915(e)(1). ("The court may request an attorney to represent any person unable to afford counsel.") There is no constitutional right to appointment of counsel in civil cases, and the decision whether to appoint counsel is within the discretion of the Court. Appointment of counsel for indigent plaintiffs having claims under Bivens is required only in cases presenting complex issues or exceptional circumstances and the plaintiff's ability to present the case is questionable. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent to the District Court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him."); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)("[I]t is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases . . .."); United States v. $27,000.00, More or Less in U.S. Currency, 865 F.Supp. 339, 340 (S.D.W.Va. 1994)(citing Mallard v. United States Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 300-02, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989); Spears v. United States, 266 F.Supp. 22 (S.D.W.Va. 1967)). In deciding whether to request representation for a civil litigant, the Court should consider the following factors: (1) whether the plaintiff has presented a colorable claim, (2) the nature and complexity of the factual and legal issues, (3) the plaintiff's capability to present his own case, (4) the degree of factual investigation involved and the plaintiff's ability to investigate adequately crucial facts related to his claims, (5) the extent to which the case is likely to hinge on credibility determinations, and (6) whether expert testimony must be presented. See United States v. $27,000.00, More or Less in U.S. Currency, 865 F.Supp. at 340-41; McNeil v. Lowney, 831 F.2d 1368, 1371-72 (7th Cir. 1987), cert. denied, 485 U.S. 965, 108 S.Ct. 1236, 99 L.Ed.2d 435 (1998); Maclin v. Freake, 650 F.2d 885, 887-89 (7th Cir. 1981)(*per curiam*); Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir.), cert. denied, 510 U.S. 1196, 114 S.Ct. 1306, 127 L.Ed.2d 657 (1993).

Having examined the record in this case and finding that the factual and legal issues presented are not complex and did not require extensive investigation or involve exceptional circumstances that meets the standard for appointment of counsel in a civil action, and finally, as the undersigned has recommended that this matter be dismissed on Defendant's ***Motion to Dismiss***, Plaintiff's request for appointment of counsel is therefore **DENIED** as **MOOT**.

undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Defendant Bynum's ***Motion*** be granted for the reasons stated *infra*.

**Procedural History**

On August 19, 2019, Plaintiff acting *pro se*,[2] filed a Complaint against Defendant Bynum[3] for injuries he received during his arrest on July 31, 2016; specifically, Plaintiff alleges that he suffered from migraine headaches ever since and was recently informed by medical staff at Mount Olive Correctional Complex in July 2019 that his migraines could be the result of injuries he received during his arrest on July 31, 2016. (ECF No. 2) By Order entered on October 23, 2019, the undersigned directed Plaintiff to amend his Complaint to provide specific facts as to how each defendant violated his constitutional rights as well as to provide an address for each defendant in order for this Court to assist Plaintiff with service of process due to his *in forma pauperis* status. (ECF No. 6) Accordingly, on November 7, 2019, Plaintiff filed his Amended Complaint (ECF No. 10). On November 26, 2019, Defendant Bynum filed his Motion to Dismiss (ECF No. 15) and Memorandum in Support of same (ECF No. 16). On December 9, 2019, Plaintiff filed his Response in opposition to Defendant Bynum's Motion (ECF No. 21) along with an Affidavit (ECF No. 22).[4] On December 16, 2019, Defendant Bynum filed his Reply (ECF No. 23). Accordingly, this matter is fully briefed and ready for resolution.

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less strident standard than if they were prepared by a lawyer and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] Initially, Plaintiff alleged that in addition to the named Defendant herein, he sued "Jhon Doe x8" but failed to identify and allege specific acts against the other defendants in the original Complaint. In compliance with this Court's Order, Plaintiff filed an amended complaint providing additional specific facts in support of his claims but did not include the additional "Jhon Doe x8" defendants, accordingly, those defendants were terminated from this proceeding.

[4] In response to the Court's Roseboro Notice issued on November 26, 2019 directing Plaintiff to file any response to the Motion to Dismiss by December 10, 2019 (ECF No. 17), Plaintiff filed a Motion for Appointment of Counsel (ECF No. 18) and a Motion for a Ten Day Extension to File Response to Defendant's Motion (ECF No. 19). The Court granted Plaintiff's Motion for the ten-day extension and permitted him to file his response by January 6, 2020 (ECF No. 20).

**Plaintiff's Factual Allegations**[5]

The background of this case concerns events occurring during the evening hours on July 31, 2016 when Plaintiff was riding as a passenger in a vehicle, a Lewisburg City Police law enforcement officer, "N. Sammes", stopped the vehicle due to a traffic violation. (ECF No. 10 at 6) Patrolman Sammes asked the driver and Plaintiff to exit the vehicle upon being informed by the driver that he had a firearm. (Id.) At this time, two West Virginia State Police troopers arrived at the scene, one of whom was Defendant Bynum. (Id.) During a search of the vehicle, Defendant Bynum attempted to ask Plaintiff questions, however, Plaintiff informed Defendant Bynum that he did not feel comfortable speaking to him without a lawyer. (Id.) In response, Defendant Bynum grabbed Plaintiff by the back of his neck and forced his head between his knees and threatened to kill Plaintiff. (Id.) Plaintiff was then handcuffed by Patrolman Sammes and taken to the Lewisburg Police Station against his will. (Id. at 6-7)

At the police station, Plaintiff asserts that he was threatened, degraded and humiliated by Defendant Bynum as well as others. (Id. at 7) Plaintiff was confused as to whether he was under arrest or not and when he asked to call his lawyer, Defendant Bynum punched him in the face hard enough that the back of his head hit a wall, putting a hole in it; Defendant Bynum then slammed Plaintiff to the floor and continued to beat the back and side of Plaintiff's head. (Id.) Plaintiff was taken to the Greenbrier Valley Hospital that same night due to the injuries he received from the beating. (Id. at 8) As a result of his injuries, Plaintiff asserts he suffered severe permanent injuries that will continue into the future – he suffered a laceration to the back of his head, a black eye, and various contusions to his head, ear and shoulder. (Id.)

After receiving medical treatment, while under arrest by Patrolman Sammes, Plaintiff was

[5] The undersigned refers to Plaintiff's allegations contained in his Amended Complaint, the subject of Defendant Bynum's Motion to Dismiss.

"transported to Southern Regional Jail where he was arraigned on false criminal charges and was required to post bond on said false charges." (Id. at 9)

In July 2019, Plaintiff sought medical treatment at the Mount Olive Correctional Complex for his "increasingly intensifying migraines" and was told his condition was probably permanent and could be related to the head injuries he received when Defendant Bynum beat him. (Id. at 8) Plaintiff "has been living in a constant fear that a malicious attack will occur again and he will be killed as promised by Defendant[.]" (Id. at 9)

Plaintiff asserts four counts against Defendant Bynum: in his individual or personal capacity, (1) battery; and (2) assault; in his official capacity, (3) false arrest; and (4) violation of the Eighth and Fourteenth Amendments. (Id. at 5) Regarding the battery claim, Plaintiff alleges that as a proximate result of Defendant Bynum's "malicious and outrageous conduct", Plaintiff suffered severe and permanent injuries and incurred "special damages in the form of medical expenses and lost wages" plus future damages. (Id. at 10) Plaintiff alleges Defendant Bynum committed unlawful assault due to his threat that he was going to "kill him" and that Defendant Bynum threatened to "come and get him." (Id.) When Plaintiff advised he wanted a lawyer present before he spoke with Defendant Bynum, Defendant Bynum verbally and physically attacked Plaintiff and then had Plaintiff "falsely placed under arrest for assault and battery of a police officer." (Id. at 11) Plaintiff asserts his arrest was without probable cause and for the purpose of concealing police brutality. (Id.) Pursuant to 42 U.S.C. § 1983, Defendant Bynum's conduct was under color of law, and violated Plaintiff's right to be free from cruel and unusual punishment under the 8th and 14th Amendments. (Id. at 13)

Plaintiff asks for judgment against Defendant in the sum of $500,000.00 as well as punitive damages in the sum of $500,000.00. (Id. at 14)

**Defendant Bynum's Argument in Support of Dismissal**

Defendant Bynum asserts that Plaintiff's claims are barred by the statute of limitations because he filed his Complaint more than three years after the date of the incident. (ECF No. 16 at 2) With regard to Plaintiff's claims of battery and assault, West Virginia Code § 55-2-12(b) provides a two-year statute of limitations, accordingly, these claims against Defendant Bynum are time-barred. (Id. at 3-4) Plaintiff's remaining claims fall under Section 1983, and also governed by West Virginia's two-year statute of limitations under the aforementioned personal injury statute for bringing such claims, and based on Plaintiff's own pleadings, he knew of his injuries and the cause of his injuries when they occurred on July 31, 2016. (Id. at 4-5) Defendant Bynum argues that Plaintiff's Eighth and Fourteenth Amendment claims fail as a matter of law as the Eighth Amendment does not apply until after a conviction and sentence and Plaintiff's claim under the Fourteenth Amendment is more appropriately addressed under the Fourth Amendment. (Id. at 4, n.1 and n.2) Because Plaintiff failed to file his complaint until August 19, 2019, these remaining claims are also time-barred. (Id. at 5) Defendant Bynum asks the Court to grant his motion and dismiss Plaintiff's Amended Complaint with prejudice. (Id. at 6)

**Plaintiff's Response to Defendant's Motion to Dismiss[6] [7]**

Plaintiff asserts that he first learned of the "nexus between the July 31, 2016 violent assault by Defendant Bynum, and the severity and permanence of his injury" from Dr. Charles Lye, M.D., Wexford Healthcare, Inc., 501 Holiday Drive, Foster Plaza Four, Pittsburgh, PA 15220. (ECF No.

[6] Plaintiff indicated that his claims "arise under the United States Constitution, particularly under provisions of the First, Fourth, Fifth, Eighth and Fourteenth Amendments." (ECF No. 21 at 1) After having reviewed Plaintiff's pleadings, he provides no facts to support his claims pursuant to the First Amendment. With respect to Plaintiff's alleged Fifth Amendment claim, Plaintiff only generally alleges that upon his invocation of his right to remain silent, Plaintiff was subject to the alleged physical assault by Defendant Bynum, which constituted a violation of his right to due process, however, this claim is addressed *infra*.

[7] Plaintiff contemporaneously filed an Affidavit (ECF No. 22) with his Response which outlined the same allegations asserted in the Response, therefore, the entirety of same will not be reiterated for purposes of outlining Plaintiff's Response.

21 at 2) Plaintiff states that Dr. Lye theorized a serious head injury might be the origins of Plaintiff's migraines; the only head injury Plaintiff sustained was on July 31, 2016 from Defendant Bynum. (Id. at 3) Plaintiff further states that he knew Defendant Bynum beat him on July 31, 2016 and that he received bruises, contusions, abrasions and lacerations, but Plaintiff did not know of the brain injury he received at that time until July 2019. (Id.)

Regarding Plaintiff's claims of false arrest and wrongful imprisonment, Plaintiff states that "Defendants Bynum, Sammes and their allies and confederates" placed Plaintiff under arrest without probable cause and did so maliciously and wantonly for the purpose of "concealing police brutality and outrageous conduct exacted upon Plaintiff by Defendants as herein described." (Id. at 3-4) Plaintiff asserts that he was illegally held in custody at the Lewisburg Police Station and after receiving medical treatment, Patrolman Sammes took Plaintiff to the Southern Regional Jail on August 1, 2016 for an arraignment on "a false charge of assault on a police officer (Defendant Bynum)" and "the magistrate appeared to know the charge was not valid, set bond, then ordered the Plaintiff released on his own recognizance[.]" (Id. at 4) Plaintiff states that "[a]ll charges stemming from the July 31, 2016 traffic stop were subsequently found to lack merit and were quickly dismissed" due to lack of evidence against Plaintiff. (Id.) Plaintiff alleges that the "Defendants conspired and agreed to withhold from the magistrate arraigning the Plaintiff facts known to them to be relevant to the issue of Plaintiff's [] arrest and thereby conspired to falsely arrest and wrongfully imprisoned Plaintiff." (Id.)

With regard to his claim of denial of due process, Plaintiff asserts that "[b]y their conspiratorial misconduct . . . Defendants have entitled Plaintiff to an award of damages on account of their conspiracy to deprive Plaintiff of his right to not be deprived of liberty without due process of law[]"; Plaintiff invoked his right to remain silent and his repeated requests to Defendant Bynum

for an attorney or to call an attorney were denied to him. (Id. at 5)

In support of his claim for cruel and unusual punishment, Plaintiff states that "defendants initially chose the Lewisburg Police station garage as opposed to inside the Lewisburg Police Station because it did not have a video camera to record their violent acts[.]" (Id.) Plaintiff alleges that a video camera may have recorded Defendant Bynum's physical attack on Plaintiff and that "numerous law enforcement officers were present and witnessed Defendant Bynum's crime", but none intervened. (Id. at 5-6) Plaintiff alleges that "Defendants withheld emergency medical care for hours" and that Plaintiff received "severe, permanent personal injuries and will continue to suffer same for the remainder of his life[]" as well as "suffered and will suffer in the future severe and permanent emotional damages"; "Defendants placed Plaintiff in fear for his life." (Id. at 6)

Plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated when on August 1, 2016, Defendant Bynum performed an illegal search of Plaintiff's White Sulphur Springs apartment. (Id.)

Finally, Plaintiff alleges that Defendant Bynum "and his allies and confederates" threatened to kill Plaintiff and his entire family if Plaintiff told anyone what happened, causing Plaintiff sufficient fear "to make Plaintiff forego his constitutional right to access the courts." (Id. at 7)

Plaintiff alleges he "did not say or do anything to irritate or provoke Defendant Bynum or others into committing the attack, assault and abuses." (Id.) Plaintiff asserts that West Virginia State Troopers, Greenbrier County Deputy Sheriffs, and Lewisburg City Policemen as well as the "Individual Defendants" acted in bad faith under color of law. (Id.) Plaintiff alleges that in addition to his physical injuries, he suffered from emotional trauma, and will continue to suffer from these injuries in the future. (Id. at 7-8) Plaintiff alleges he "lives in fear that a malicious attack will occur

again and he will be killed as promised by Defendants Bynum and Sammes" and asks the Court to issue the appropriate restraining order. (Id. at 8) Plaintiff asserts he just came in possession of sufficient facts about the harm in July 2019 and asks the Court to deny Defendant Bynum's motion to dismiss. (Id.)

**Defendant Bynum's Reply**

Because Plaintiff's Response does not refute the fact that as of July 31, 2016 he possessed sufficient facts about his claims and injuries that a reasonable inquiry would have revealed a cause of action, Defendant Bynum asks this Court to grant his motion to dismiss as Plaintiff's claims are barred by the applicable statutes of limitation. (ECF No. 23) Defendant Bynum observes that Plaintiff's professed realization that he was unaware of the severity of his head injury until July 2019 does not delay the accrual of his claims as in a medical malpractice context, and this Court has held in similar cases[8] such claims accrue on the date of the alleged incident. (Id. at 2-3) In short, Plaintiff's claims accrued on July 31, 2016 and the statute of limitations for his claims expired on July 31, 2018, one year prior to his filing the instant Complaint. (Id. at 3) Plaintiff's claims are time-barred by West Virginia's two-year statute of limitations, therefore, his Complaint should be dismissed with prejudice. (Id.)

**Motion to Dismiss Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

[8] Citing McKelvey v. Western Regional Jail, 2015 WL 1395792, at *5 (S.D.W.Va. Feb. 3, 2015); Kanoe v. Swope, 2012 WL 4507602, at *6 (S.D.W.Va. Feb. 22, 2012); Bishop v. West Virginia Regional Jail and Correctional Facility Authority, 2018 WL 1513294, at *6 (S.D.W.Va. Mar. 26, 2018) (ECF No. 23 at 3)

The required "short and plain statement" must provide " 'fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), *overruled on other grounds*, Twombly, 550 U.S. at 562-563)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id. The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Application of the Rule 12(b)(6) standard also requires that the court " 'accept as true all of the factual allegations contained in the complaint....' " Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

**State Law Claims**

As stated *supra*, Plaintiff has alleged Counts 1 and 2 of his Amended Complaint concern state law claims against Defendant Bynum, specifically, battery and assault. As this Court has

recognized numerous times before, such torts involve personal injury claims which are subject to the West Virginia's general statute of limitations for personal injury as provided by West Virginia Code § 55-2-12(b). See Bishop v. West Virginia Regional Jail and Correctional Facility Authority, No. 2:17-cv-03064, 2018 WL 1513294, at *3 (S.D.W.Va. Mar. 26, 2018) (internal citations omitted). Therefore, the two-year statute of limitations governs Plaintiff's claims of battery and assault.[9] Plaintiff alleged these offenses occurred on July 31, 2016, accordingly, this civil action accrued when the offenses occurred, with an expiration date of July 31, 2018. See Merrill v. W. Va. Dep't of Health & Human Res., 632 S.E.2d 307, 312 (W. Va. 2006). Clearly, Plaintiff filed this civil action well beyond the statute of limitations and by operation of law, is time-barred.

To the extent Plaintiff endorses that the pertinent statute of limitations has been tolled, the Court must explore whether any of the recognized tolling doctrines are applicable in this case.

For starters, Plaintiff seems to allege that the discovery rule tolled the statute of limitations, based on his assertion that just in July 2019 "he first learned the nexus" between the July 31, 2016 assault and battery by Defendant Bynum when Dr. Lye explained that Plaintiff's migraine headaches may have been the result of a serious head injury. (ECF No. 21 at 2-3) "[U]nder the discovery rule, the statute of limitations is tolled until the individual discovers or could have discovered the alleged defect with reasonable diligence." Beattie v. Skyline Corp., 906 F. Supp. 2d 528, 540 (S.D.W.Va. 2012). The Supreme Court of Appeals of West Virginia has stated the following regarding the discovery rule:

---

[9] To the extent that Plaintiff has further amended his Amended Complaint by alleging that Defendant Bynum and "Defendant Sammes and their allies and confederates" conspired to commit or conceal the alleged battery and assault (See ECF No. 21 at 3-7), as the underlying conduct on which the conspiracy claim is ostensibly based, once again, the statute of limitations is two-years. See Dunn v. Rockwell, 689 S.E.2d 255, 269 (W. Va. 2009). Further, to the extent that Plaintiff has alleged that he suffered "emotional damages" as a result of the July 31, 2016 assault (See ECF No. 10 at 8, ¶14, ¶16), those claims are also governed by the two-year statute of limitations. See Courtney v. Courtney, 437 S.E.2d 436, 442 (W.Va. 1993) (claims for infliction of emotional distress and assault and battery governed by two-year limitations period under Section 55-2-12(b)).

> The statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Dunn, 689 S.E.2d at 264-265. Similarly, the Fourth Circuit has held that "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (citing United States v. Kubrick, 444 U.S. 111, 122-124, 100 S.Ct. 352, 359-360, 62 L.Ed.2d 259 (1979)). Plaintiff alleges that only just recently he discovered the cause of his migraine headaches, however, given that Plaintiff unequivocally conceded that it was "obvious" that on July 31, 2016, he knew of his injuries and that Defendant Bynum was the cause of them (ECF No. 21 at 3). Significantly, Plaintiff has alleged that he suffers from migraines since "the day Defendant violently beat Plaintiff's head" (ECF No. 10 at 8, ¶17)[10]. Clearly, Plaintiff possessed "sufficient facts about the harm done to him that reasonable inquiry" would have revealed his cause of action against Defendant Bynum, thus, under these facts, the accrual of his claims accrued July 31, 2016 and were not tolled to July 2019. See Nasim, 64 F.3d at 955; McKelvey v. Western Regional Jail, No. 3:13-cv-22206, 2015 WL 1395792, at *5 (S.D.W.Va. Feb. 3, 2015) (Eifert, M.J.) ("as soon as [] assault occurred, [plaintiff] possessed sufficient facts about the harm done to him that reasonable inquiry would have revealed his cause of action.").

Plaintiff also appears to invoke equitable tolling of the statute of limitations, or alternatively, the pertinent statute of limitations is tolled by equitable estoppel, insofar as Plaintiff alleges that Defendants[11] threatened to kill him and his family in an effort to prevent Plaintiff from

---

[10] See also ECF No. 2 at 5, ¶ 5: "The Plaintiff has suffered from migrane's ever sense [*sic*]".

[11] Though Plaintiff makes these allegations in connection with his Section 1983 claims, Plaintiff indicates that Defendant Bynum, Patrolman Sammes and other law enforcement officers which include other members of the West Virginia State Police, the Greenbrier County Sheriff Department, and the Lewisburg City Police all conspired together

filing suit. (ECF No. 21 at 6-7) The Fourth Circuit provided a brief explanation concerning these doctrines, which can assist this Court in discerning Plaintiff's ostensible argument: "The doctrines of equitable tolling and equitable estoppel have a common origin; they are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). The Fourth Circuit explained that the difference between the two doctrines is that equitable tolling applies where a defendant, by active deception, conceals a cause of action; equitable estoppel applies where "the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline," despite the plaintiff knowing that a cause of action exists. Id.

In this case, however, there is no evidence that Defendant Bynum (or any other potential defendant law enforcement officer) concealed a cause of action from Plaintiff, and further, Plaintiff does not allege this. Although Plaintiff does assert that Defendant Bynum threatened to kill him and his family if he disclosed the alleged beating from July 31, 2016, Plaintiff's conduct is logically inconsistent with this argument because Plaintiff *did* file suit; moreover, Plaintiff has specifically plead multiple times that he filed this lawsuit because he only recently learned in July 2019 from Dr. Lye that his migraines were due to a head injury he received from Defendant Bynum.[12] [13]

---

by threatening Plaintiff to deprive him of his constitutional access to the courts. (ECF No. 21 at 7-8)

[12] See ECF No. 2 at 5; ECF No. 10 at 8; ECF No. 21 at 2, 3, and 8; ECF No. 22 at 5.

[13] To extrapolate the allegation that Plaintiff was under some form of duress, thus preventing him from filing his civil action, the undersigned notes that even though Plaintiff swears in his Affidavit that he is not a litigious person and had "never filed a lawsuit prior to the one sub judice" (ECF No. 22 at 6, ¶30) (underline in original), the fact is that just prior to filing this civil action, Plaintiff filed a *pro se* complaint against his former attorney in this Court that indicated Plaintiff had been incarcerated since the fall of 2017 (See Travis R. Norwood v. E. Lavoyd Morgan, Jr. Associates, L.C. and E. Lavoyd Morgan, Jr., Civil Action No. 5:19-cv-00491, ECF No. 2 at 5). The implication being that the immediate alleged threat to kill Plaintiff disappeared once Plaintiff was remanded to the custody of the State; a simple search on the West Virginia Division of Corrections website indicates that Plaintiff has been incarcerated since at least September 2017:
https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Details?Id=TwsfEkLT11%2FE%2BzwISeNdex6N77fVZLictUNIoIzeqf5lydwQetJ%2FDghcbjF7VdDfOHMFB8%2FPwzmmNaycDOfO2z9bNfd4EX2CiFhNxILSiaczKGOArOjytTaJozORUNeI9dUbIXJUofGTaRsUo%2FIFCPLvTZIoReG6Zo0KNZuxZxY%3D

On the other hand, Plaintiff has also alleged that he "lives in fear that a malicious attack will occur again and he will be killed as promised by Defendants Bynum and Sammes" (See ECF No. 21 at 8). To that extent, it seems Plaintiff is alleging continuous misconduct. This Court has acknowledged that West Virginia law recognizes that "continuing misconduct . . . serves to toll the statute of limitations under the continuing tort doctrine." See Smith v. Allred, No. 2:15-cv-06026, 2016 WL 1274593, at *11 (S.D.W.Va. Mar. 31, 2016) (Copenhaver, J.) (quoting Roberts v. W. Virginia Am. Water Co., 221 W. Va. 373, 378 (2007). This Court further noted that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Id. (citing Roberts, 221 W. Va. at 378) (quoting Graham v. Beverage, 211 W.Va. 466 (2002)); see also EQT Gathering Equity, LLC v. Fountain Place, LLC, No. 2:09-0069, 2011 WL 5419452, at *3 (S.D.W.Va. Nov. 9, 2011)(discussing contours of doctrine). From this rule, Plaintiff can sue for an entire series of continuing tort violations, so long as the last violation falls within the limitation period. Id. (citing Roberts, 221 W. Va. at 375) However, as shown by Plaintiff's own inconsistent conduct, Plaintiff filed suit despite his alleged ongoing fear, further, Plaintiff does not allege any factual support for any "continuing misconduct" envisioned by West Virginia case law – the only alleged threat occurred on July 31, 2016.[14] In short, Plaintiff simply has not demonstrated any factual support that any of the named and unnamed defendants engaged in further misconduct that would trigger the application of equitable estoppel espoused by the Fourth Circuit's holding in English v. Pabst Brewing Co., 828 F.2d 1047 (4th Cir. 1987) and its progeny. See also, A Society Without a Name v. Virginia, 655 F.3d 342 (4th Cir. 2011) (finding

[14] At the latest, the alleged threat continued to August 1, 2016, when Defendant Bynum "without probable cause" conducted a search of Plaintiff's White Sulphur Springs apartment which "Plaintiff knew Defendant Bynum did this to prove that he knew where the Plaintiff lived." (See ECF No. 21 at 6)

continual unlawful acts are distinguishable from continuing *ill effects* of an original violation because the *latter do not constitute a continuing violation*) (emphasis supplied); McKenzie v. Delong, 2018 WL 4677852 (N.D.W.Va. May 17, 2018) (finding that although plaintiff vaguely alludes to having waited to file his case until he was free from custody of the West Virginia Regional Jail authority for fear of retaliation, plaintiff failed to provide any detail or factual information to support such a claim).

**Section 1983 Claims**

Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

Section 1983 claims are subject to the limitations period applied by the forum state to personal injury actions. Wilson v. Garcia, 471 U.S. 261, 280 (1985); see also Owens v. Okure, 488 U.S. 235 (1989)(holding that "where a state has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions ... the residual or general personal injury statute . . . applies" to Section 1983 claims). In West Virginia, Section 1983 claims are subject to the two-year period set forth in W. Va. Code § 55-2-12, *supra*. See e.g., Sattler v. Johnson, 857 F.2d 224, 226-27 (4th Cir. 1988); Bell ex rel. Bell v. Bd. of Educ. of County of Fayette, 290 F. Supp. 2d 701 (S.D.W.Va. 2003).

"[E]ven though the limitation period is borrowed from state law, the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*)(emphasis in original)(citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). "[T]o determine the date of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 389 (4th Cir. 2014)(quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)), *cert. denied sub nom*, Baltimore City Police Dep't v. Owens, 135 S. Ct. 1893 (2015). Based on the accrual of typical common-law tort claims, " 'it is the standard rule that accrual [for § 1983 claims] occurs when the plaintiff has a complete and present cause of action' against a defendant—that is, when the plaintiff knows or has reason to know of his injury." Owens, 767 F.3d at 389 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)). However, it is important to recognize that the "standard rule" allows a few exceptions: for example, because they are analogous to the tort of false imprisonment, section 1983 claims for wrongful arrest do not accrue until the individual is released or his detention becomes lawful. Wallace, 549 U.S. at 389-392 (holding that "false imprisonment consists of detention without legal process, [and] a false imprisonment ends once the victim becomes held pursuant to such process," and that false imprisonment claim brought by unlawfully arrested plaintiff accrued "when [plaintiff] appeared before the examining magistrate and was bound over for trial," because his detention then became legal)(emphasis in original).

As an initial matter, with respect to the unnamed individuals Plaintiff accuses of having participated in the alleged conspiracy of a litany of offenses, to-wit: (1) false arrest and wrongful imprisonment; (2) denial of due process; (3) cruel and unusual punishment; (4) illegal search and

seizure; and (5) infringement of access to courts, there are no factual allegations against any specific or identified law enforcement officer, thus Plaintiff's claims against "West Virginia State Troopers, Greenbrier County Deputy Sheriffs, and Lewisburg City Policemen" fail. (ECF No. 21 at 7) Further, Plaintiff did not properly request leave of this Court to amend his Amended Complaint to include these additional parties in accordance with Rule 15 of the Federal Rules of Civil Procedure.[15] Moreover, Plaintiff has not offered any facts related to any of these potential defendants that are material to his claims, only "labels and conclusions" which are verboten under Twombly, 550 U.S. at 555.

With regard to Plaintiff's amended claims against Patrolman Sammes, again, Plaintiff did not request leave of Court to add this defendant[16], and instead, offers numerous conclusory allegations against Patrolman Sammes: (1) he handcuffed Plaintiff and took Plaintiff "against his will to the Lewisburg Police Station" (ECF No. 10 at 6-7); (2) he then "walked him to a garage wing of the Lewisburg Police Station, where Plaintiff was threatened, degraded and humiliated by Defendant and his gang type mentality allies and confederates" (Id. at 7); (3) he placed Plaintiff under arrest and transported Plaintiff to Southern Regional Jail "where he was arraigned on false criminal charges and was required to post bond on said false charges" (Id. at 9); and he had threatened to kill Plaintiff (ECF No. 21 at 8). Throughout Plaintiff's Response and in his accompanying Affidavit (ECF Nos. 21, 22), Plaintiff conflates the specific allegations he levels against Defendant Bynum with Patrolman Sammes, including: (1) false arrest and wrongful imprisonment; (2) denial of due process; (3) cruel and unusual punishment; (4) illegal search and

---

[15] Plaintiff requested that "the Defendants be made a party to this action by the service of a summons and a copy of this Complaint upon him by appropriate process" (ECF No. 10 at 14, ¶A), however, as this Court has previously warned Plaintiff, 28 U.S.C. § 1915(d) does not impose any duty upon the Court to search for the location of, or identify, any unserved defendants for the purpose of perfecting service of process. (See ECF No. 6) In any event, because the undersigned has recommended dismissal of Plaintiff's Complaint(s), Plaintiff's request for service of summons is hereby **DENIED** as **MOOT**.

[16] See also fn15, *supra*.

seizure[17]; and (5) infringement of access to courts.[18]

As discussed *supra*, Plaintiff fails to demonstrate that any of the alleged constitutional violations that concern Defendant Bynum were the product of continuous misconduct that would toll the statute of limitations. From the Amended Complaint, this failure is noted in Plaintiff's claims of "false arrest" (Count 3) and "violation[n] of eighth and fourteenth amendment prohibition against inflicting cruel and unusual punishment" (Count 4) (ECF No. 10 at 11-13). Indeed, as pointed out by Defendant Bynum, Plaintiff's Eighth Amendment claim fails as a matter of law because Eighth Amendment implications do not arise without a conviction and sentence. (See ECF No. 16 at 4, fn1, citing Graham v. Conner, 490 U.S. 386, 392, n. 6 (1989).); see also, Ingraham v. Wright, 430 U.S. 651, 669-671, 97 S.Ct. 1401, 1411-1412, 51 L.Ed.2d 711 (1977). Indeed, Plaintiff specifically alleges that "[a]ll charges stemming from the July 31, 2016 traffic stop were subsequently found to lack merit and were quickly dismissed as there was no evidence that the Plaintiff assaulted Defendant Bynum or had committed any other criminal act." (See ECF No. 21 at 4) Accordingly, Plaintiff's claims as they relate to "cruel and unusual punishment", fail

[17] Plaintiff only specifically alleges that Defendant Bynum performed the search and seizure of his apartment. (See ECF No. 21 at 6)

[18] The undersigned notes that in response to the Court Order (ECF No. 6) directing Plaintiff to amend his Complaint and provide the identities and addresses of those individuals he alleges caused him injury, Plaintiff **only** asserted his claims against Defendant Bynum (See ECF No. 10 at 4) and Defendant Bynum was the only party Plaintiff listed as a defendant. Therefore, for the sake of simplicity, and to the extent Plaintiff wishes to assert a claim against Patrolman Sammes, Plaintiff should initiate a separate civil action pursuant to 42 U.S.C. § 1983. As noted herein, *supra*, generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. Because Plaintiff alleges false arrest, false imprisonment, and ostensibly malicious prosecution against Patrolman Sammes specifically, the undersigned therefore finds that Plaintiff's allegations concerning Patrolman Sammes do not relate back to the allegations contained in Plaintiff's original Complaint in the above action. Further, Plaintiff appears to allege judicial misconduct by the arraigning unnamed magistrate, but provides no further details. (See ECF No. 21 at 4) Accordingly, the undersigned further **ORDERS** that the Clerk send Plaintiff a copy of a form Complaint and Application to Proceed *in forma pauperis* and that within 30 days of the date of entry of this Order (1) Plaintiff file, if he wishes to proceed with a Section 1983 action, the form Complaint specifying, among other things, the names of individual Defendant(s) in his Section 1983 action and stating specific facts as to how each defendant violated his constitutional rights, and (2) Plaintiff either pay the Court's filing fee ($350) and administrative fee ($50) totaling $400 or file the Application to Proceed *in Forma Pauperis* and other documents as required by 28 U.S.C. § 1915(a)(1) and (2).

as a matter of law.

Nevertheless, with respect to Plaintiff's "false arrest" charge in Count 3 from his Amended Complaint and from his Response, which includes Plaintiff's claims of false arrest and wrongful imprisonment, denial of due process, illegal search and seizure, and infringement of access to courts, again, Plaintiff asserts no factual support that indicates the applicable statute of limitations were tolled. For instance, the false arrest and wrongful imprisonment claim, which may or may not have been performed by Defendant Bynum[19], appears to have accrued on or about August 1, 2016, because on that day, Plaintiff was either "released on his own recognizance" when he was arraigned by the magistrate (See ECF No. 22 at 4, ¶22) or picked up from the Southern Regional Jail by his girlfriend and driven home (See Id. at 5, ¶23). See Wallace, 549 U.S. at 389-92. With regard to Plaintiff's claim of denial of due process, which the undersigned construes as Plaintiff's Fourteenth Amendment[20] claim as it relates to the alleged physical assault by Defendant Bynum, Plaintiff's allegations clearly state that the physical assault and threats occurred only on July 31, 2016, and without any further factual support to establish such violations occurred beyond those dates. Again, as demonstrated *supra* with regard to Plaintiff's claim of infringement of access to courts, there is no factual support of an ongoing tort for this claim to survive the statute of limitations.

In sum, it is clear from Plaintiff's own pleadings that his Section 1983 claims accrued when

---

[19] As noted *supra*, Plaintiff specifically alleged that Patrolman Sammes performed the false arrest and wrongful imprisonment in his Amended Complaint (ECF No. 10 at 9, ¶18), in his Response (ECF No. 21 at 3), and in his Affidavit (ECF No. 22 at 2, ¶7; 4, ¶22; 6, ¶29); Plaintiff also implicates Patrolman Sammes in the ostensible malicious prosecution claim in his Amended Complaint (ECF No. 10 at 9, ¶18) and in his Affidavit (ECF No. 22 at 6, ¶29).

[20] A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen," Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968); see Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Even construing Plaintiff's claim as a Fourth Amendment violation, to the extent that he was initially "seized" by Patrolman Sammes during the traffic stop, the statute of limitations has run on this claim, given that the alleged traffic stop occurred on July 31, 2016. The same holds true for Plaintiff's alleged claim of the illegal search and seizure by Defendant Bynum which Plaintiff alleged occurred on August 1, 2016 when Defendant Bynum searched Plaintiff's apartment.

he possessed sufficient facts about the harm done to him that reasonable inquiry would have revealed his cause of action, that is to say, July 31, 2016, or at the latest, August 1, 2016. Nasim, 64 F.3d at 955. Given that Plaintiff did not file this civil action until August 19, 2019, more than three years after the alleged harm, and more than a year after the expiration of the two-year statute of limitations, Plaintiff's Amended Complaint should be dismissed with prejudice.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant Bynum's ***Motion to Dismiss*** (ECF No. 15) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Volk

and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

ENTER: January 10, 2020.

Omar J. Aboulhosn
United States Magistrate Judge